United States District Court
Southern District of Texas
**ENTERED**
March 31, 2021
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

No. 3:19-cv-11

Norberto Atencio, *Plaintiff*,

v.

International Longshoremen's Association, Local 20, *Defendant*.

## MEMORANDUM OPINION AND ORDER

Jeffrey Vincent Brown, United States District Judge.

In this Title VII employment-discrimination action, the defendant, International Longshoreman's Association, Local 20, moves for summary judgment. *See* Dkt. 39. After reviewing the motion, other pleadings in the file, and the applicable law, the court grants the motion.

### I. Background

The International Longshoreman's Association, Local 20 (the Local 20) is a labor organization that operates a hiring hall for longshoremen in the Port of Galveston.[1] The Local 20 refers longshoremen to signatory employers of the current

---

[1] Dkt. 39-1, Ex. B, Aff. of Henry Torres ¶ 3 (PDF p. 90).

Union Collective Bargaining Agreement (CBA).[2] The Local 20 is known as a "Deep Sea Local" because it primarily refers workers to load and unload ocean-going vessels.[3]

To receive work, workers first assemble at the Local 20's hiring hall. A worker does not need to be a union member to obtain a work assignment. Still, per the terms of the CBA and the Local 20's procedures, available work is distributed based on seniority. The Local 20 assigns workers seniority numbers based on the number of hours they have worked during the year.[4] Workers may lose their seniority if they do not reach a certain number of hours.[5]

Once at the hall, workers with seniority stand in designated areas based on their assigned number. Those without seniority wait in a space designated for "casuals." When a job comes available, a gang foreman walks down the seniority aisles offering each seniority holder an opportunity to accept or reject the job. After the seniority holders are offered positions, the foreman proceeds to the "casual" section and fills the gang's remaining spots with whomever he or she wishes.[6]

---

[2] *Id.*

[3] *Id.*

[4] *Id.* ¶ 6 (PDF p. 91); *see* Dkt. 39-1, Ex. A (PDF pp. 6–13) (example of seniority roster).

[5] Dkt. 39-1, Ex. B, Aff. of Henry Torres ¶ 6 (PDF p. 91).

[6] *Id.* ¶ 7.

Some jobs require special qualifications, regardless of the worker's seniority or casual status.[7] The local business agent maintains a notebook that lists any special qualifications or certifications a worker may hold. The notebook is generally available for anyone in the hall to review. If a job requires a particular qualification or accreditation, a worker who is not so qualified may be "called out" of a gang.[8]

Finally, once a worker is referred from the hiring hall, the hiring company's superintendent checks the workers' certifications, if required, and approves the workers. Once approved, the workers are officially hired.[9]

The plaintiff, Norberto Atencio, alleges that he first sought work as a longshoreman at the Local 20's hiring hall in February 2017.[10] The Local 20, however, maintains that Atencio first appeared at the hiring hall around November. According to the Local 20, Atencio sought union membership that same month.[11]

On or around November 27, 2017, a roll-on/roll-off (or RORO) job became available for casuals in the hall.[12] Atencio wanted to join the gang for that job and

---

[7] *Id.* ¶ 8.
[8] *Id.* ¶ 10 (PDF p. 92).
[9] *Id.* ¶ 11.
[10] Dkt. 23.
[11] Dkt. 39-1, Ex. B, Aff. of Henry Torres ¶ 12 (PDF p. 92).
[12] *Id.* ¶ 13.

claimed that he had the RORO certification. Henry Torres, an assistant business agent for the Local 20, looked at the certifications notebook and found that Atencio had only completed the Hazmat and Longshore skills certifications.[13] So Atencio was not added to the gang. A later investigation revealed that Atencio had completed the RORO certification around November 7, but it had not been added to the certifications notebook.[14] Torres attests that from the time he was denied the RORO job in late November 2017, Atencio "seem[ed] to believe" that Torres "refused to refer him for work."[15]

On November 30, 2017, Atencio filed a charge of discrimination against the Local 20 with the Texas Workforce Commission Civil Rights Division and the Equal Employment Opportunity Commission (EEOC).[16] Atencio charged that the Local 20 discriminated against him "because of a conflict and [his] national origin (Hispanic)." Atencio specifically alleged that Henry Torres

> would assign work to other [casual workers] and skip over me. He said that I was not certified[,] but I corrected him, demonstrating proof of

---

[13] *Id.* The Local 20 attaches a "true and correct copy of the relevant page of the notebook reflecting Atencio's certifications for that time" as an exhibit to its motion. *See id.* (PDF at 115). However, the court notes that the date column on the far left lists the date as 3/1/2018. The title for this column is not provided, so it is unclear if this page was accurate on November 27, 2017.

[14] *Id.* ¶ 14.

[15] *Id.* ¶ 15.

[16] Dkt. 23.

4

my certification. Mr. Torres objected to my correcting him . . . and retaliated against me . . . . Mr. Torres was very offensive, rude and defiant, and took a personal dislike against me. . . . I repeatedly complained to the union representatives about unfair work behavior, including questionable union practices. . . . My complaints have not been fully addressed. I am being harassed and continue to be denied work.[17]

On December 19, 2017, the EEOC sent a notice-of-right-to-sue letter to Atencio.[18] In that letter, the EEOC noted it was "unable to conclude that the information obtained establishes violations of statutes."[19]

On January 8, 2019, Atencio, appearing *pro se*, filed his employment-discrimination complaint.[20] Atencio later filed an amended complaint.[21]

Atencio's amended complaint is consistent with his EEOC charge but adds further details of Torres's hostility toward him. Specifically, Atencio alleges that when he asked Torres why he did not hire him for the November 27 RORO job, Torres questioned whether Atencio was RORO-certified. When Atencio tried to reassure Torres that he was, Torres blew up, screaming that Atencio "did not have

---

[17] *Id.*

[18] *See* Dkt. 1-4.

[19] *Id.*

[20] Dkt. 1.

[21] Dkt. 29.

to tell him how to do his job."[22] When Atencio began to video-record Torres's rage, Torres told him to "put that tape record[er] in [his] ass," cursed at Atencio, and acted in a "challenging and intimidating way."[23] Atencio further alleged that the Local 20 ignored his objections.[24] Moreover, following an injury in October 2018, Atencio says the union refused to assist him with worker's compensation because he was not a member. Meanwhile, Torres continued to actively prevent employers from hiring him.[25]

In March 2020, the court dismissed Torres as a defendant from the case.[26] The Local 20 later moved for summary judgment.[27] Atencio has not filed a response.

## II. Motion-for-Summary-Judgment Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[28] Material facts are those which may affect the outcome of the

---

[22] Dkt. 29-1 at 2.

[23] *Id.*

[24] *Id.* at 2–3.

[25] *Id.*

[26] Dkt. 38.

[27] Dkt. 39.

[28] *Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)).

case, and a fact issue is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-movant.[29]

The movant may satisfy its summary-judgment burden if it demonstrates the absence of evidence to support the non-movant's case.[30] "If the moving party initially shows the non-movant's case lacks support, 'the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.'"[31]

When deciding a summary-judgment motion, the evidence must be viewed in the light most favorable to the non-movant and "all justifiable inferences are to be drawn in his [or her] favor."[32] Even if no response is filed, a court cannot grant a default summary judgment.[33] "The failure to respond to a summary judgment motion leaves the movant's facts undisputed. The court need only decide whether those undisputed facts are material and entitle the movant to judgment as a matter of law."[34]

---

[29] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018).

[30] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[31] *Renwick*, 901 F.3d at 611 (quoting *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002)).

[32] *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam)).

[33] *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

[34] *Flowers v. Deutsche Bank Nat'l Tr. Co.*, 614 F. App'x 214, 215 (5th Cir. 2015) (per curiam).

## III. Analysis

### A. Race and National-Origin Discrimination Under Title VII

Title VII prohibits labor organizations from failing or refusing

> to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin[35]

"The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff."[36] Intentional discrimination can be established through either direct or circumstantial evidence.[37]

Direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption."[38] Here, there is no direct evidence of discrimination based on national origin or race. If the court accepts as true the allegations in Atencio's amended complaint and other pleadings, Torres definitely displayed animosity toward Atencio. Nevertheless, even if Torres was

---

[35] 42 U.S.C. § 2000e-2(c); *see Rosser v. Laborers' Int'l Union,* 616 F.2d 221, 223 (5th Cir. 1980).

[36] *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004) (quoting *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003)).

[37] *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001).

[38] *Portis v. First Nat'l Bank*, 34 F.3d 325, 328–29 (5th Cir. 1994) (quoting *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)).

verbally abusive and generally unprofessional, there is no evidence of discrimination based on Atencio's race or national origin.

That leaves circumstantial evidence. When direct evidence is unavailable, the court turns to the familiar *McDonnell Douglas* burden-shifting framework.[39] Under the *McDonnell Douglas* approach, the plaintiff must first establish a *prima facie* case of racial or national origin discrimination.[40] If he does, the burden then shifts to the defendant, who must "articulate a legitimate, non-discriminatory reason" for the plaintiff's treatment. If the defendant does so, the burden returns to the plaintiff to offer evidence to create an issue of material fact that the defendant's proffered reason is pretext for intentional discrimination.[41]

A *prima facie* claim of discrimination requires the plaintiff to show that he is

(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.[42]

---

[39] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, (1973); *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

[40] *Vaughn*, 665 F.3d at 636.

[41] *Id.*; *McDonnell*, 411 U.S. at 804.

[42] *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016).

Atencio meets the first element: he is Hispanic, and his national origin is Venezuelan.[43] As for the second element, the Local 20 concedes that Atencio was qualified for the positions he sought.[44] The court also assumes that when he was not assigned work, Atencio suffered an adverse employment action. But there is no evidence that Atencio was treated less favorably than other similarly situated employees outside his protected group. Atencio generally alleges that there was "nepotism" in selecting workers. But he fails to identify any particular similarly situated person outside his protected group who was treated better than he was.[45]

Additionally, there is evidence that Atencio received more work than several workers who were similarly situated and not in his protected group.[46] Because Atencio does not identify a non-Hispanic, non-Venezuelan longshoreman of a similarly situated background who received more work assignments than he did, he has failed to establish a *prima facie* case of discrimination.

Accepting Atencio's allegations in the light most favorable to him, he has certainly established that Torres treated him with hostility and perhaps unfairly. But Title VII does not proscribe such conduct if it does not arise from discrimination.

---

[43] *See* Dkt. 1-1.

[44] Dkt. 39 at 17.

[45] *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009).

[46] Dkt. 39 at 18–19.

And Atencio's belief, however genuine, that Torres discriminated against him because of his race or national origin is not enough to establish his claim.[47]

Because the court concludes that Atencio fails to establish a *prima facie* case of discrimination, it need not consider the Local 20's proffered non-discriminatory reasons for its action.

### B. Title VII Retaliation Claim

Title VII also forbids labor organizations from retaliating against a member or applicant for membership because he made a charge under Title VII.[48] Like a discrimination claim, a retaliation claim proceeds under the *McDonnell Douglas* burden-shifting framework when there is no direct evidence.

A *prima facie* case of retaliation requires the plaintiff to show that he (1) participated in a Title VII protected activity, (2) suffered an adverse employment action by his employer, and (3) a causal connection between the protected activity and the adverse action.[49]

---

[47] *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc); *Torres v. Int'l Longshoremen 1665*, No. 3:12-cv-309, 2014 WL 4923593, at *5 (S.D. Tex. Sept. 30, 2014).

[48] 42 U.S.C. § 2000e-3(a); *Richardson v. Prairie Opportunity, Inc.*, 470 F. App'x 282, 286 (5th Cir. 2012) (per curiam).

[49] *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).

Atencio filed his charge of discrimination with the EEOC on November 30, 2017.[50] In addition to his accounts of discrimination by Torres, Atencio complains that the Local 20 would not remedy his work-assignment situation after his complaints, address his concerns about the organization's practices, admit him to the union, or help him receive worker's compensation after he was injured.[51] Yet even when all are accepted as true, Atencio's allegations do not establish a causal connection between the filing of his charge and the Local 20's subsequent actions. For example, Atencio says the Local 20 did not help him receive worker's compensation because he was not a union member—a rationale not connected to his protected activity. Moreover, his other allegations lack any explanation of a causal connection to the filing of his charge. Accordingly, the court concludes that Atencio has not established a *prima facie* claim of retaliation.

### C. ADA Claim

In his amended complaint, Atencio notes that at least two companies refused to hire him until he received a "full duty release without restrictions" following an injury.[52] Atencio believes this violates the Americans with Disabilities Act (ADA).

---

[50] Dkt. 23.

[51] Dkt. 29 at 2–4; *see also* Dkts. 18–19; Dkt. 22.

[52] Dkt. 29 at 8–9.

But as with a Title VII discrimination claim, a plaintiff must first exhaust his administrative remedies before filing an ADA claim in federal court.[53] After the alleged unlawful action, a plaintiff must file a charge detailing the ADA-prohibited discrimination either within 180 days, if he files with the EEOC, or within 300 days if he files with a state or local agency.[54] By not including his ADA claim in his initial charge of discrimination, Atencio has failed to exhaust his administrative remedies.[55] Accordingly, the Local 20 is entitled to summary judgment on any purported ADA claim.

### D. Breach of Duty of Fair Representation

Atencio's complaint could be construed to present a claim for breach of the duty of fair representation. Under the National Labor Relations Act (NLRA), labor organizations that operate hiring halls have a duty of fair representation—"to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."[56] Atencio previously filed an unfair-labor-practice charge before the

---

[53] *Patton v. Jacobs Eng'g. Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (citing 42 U.S.C. § 2000e–5(e)(1)).

[54] *Id.*

[55] *See Bustos v. United Parcel Serv, Inc.*, No. H-19-2979, 2020 WL 2529384, at *2 (S.D. Tex. Apr. 29, 2020).

[56] *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 73 (1989) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)); *Milright & Mach. Erectors, Local*

National Labor Relations Board alleging that the Local 20 violated the NLRA.[57] The charge was dismissed for lack of evidence. Atencio appealed, but the appeal was denied.[58]

The court similarly concludes that the evidence does not reveal an issue of material fact that would sustain Atencio's breach claim. As discussed, there is no evidence that the Local 20 discriminated against Atencio based on his protected class. Moreover, the way the Local 20 referred jobs to Atencio cannot be said to be "arbitrary" as the evidence shows that Atencio was offered jobs in compliance with both the CBA and the hiring hall's rules.[59]

---

*Union 720 v. NLRB*, 798 F.2d 781, 784 (5th Cir. 1986) ("We have interpreted the duty of fair representation to mean that a union operating an exclusive hiring hall 'may not apply arbitrary or invidious criteria in referring employees to jobs.'" (quoting *Int'l Union of Operating Eng'rs Local 406 v. NLRB*, 701 F.2d 504, 508 (5th Cir. 1983))).

[57] Dkt. 39-1, Ex. D (PDF p. 122).

[58] *Id.* (PDF pp. 126–27).

[59] *See Milright*, 798 F.2d at 784.

\*   \*   \*

For the above reasons, the court grants the Local 20's motion for summary judgment (Dkt. 39). A final order will be entered separately.

Signed on Galveston Island on the 31st day of March, 2021.

                                                                   _____
                                                                    JEFFREY VINCENT BROWN
                                                              UNITED STATES DISTRICT JUDGE